UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY AUGUST, #714643,

                          Plaintiff,            Civil Action No. 12-13775
                                                Honorable Patrick J. Duggan
v.                                              Magistrate Judge David R. Grand

PATRICIA CARUSO, *et al.*,

                          Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [24]**

Before the Court is the Motion for Summary Judgment filed on March 29, 2013 by four defendants, all of whom are employed by the Michigan Department of Corrections ("MDOC"): Felicia Ratliff; Tamika Woods Hawkins; Lana McCarthy; and Katherine Hammons (collectively the "MDOC Defendants"). (Doc. #24). *Pro se* Plaintiff Tracy August ("August"), an incarcerated person, submitted a response to this motion on April 24, 2013 (Doc. #29), and no reply was filed. An Order of Reference was entered on April 1, 2013, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #25).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.      **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [24] be **GRANTED** and August's complaint be dismissed as against Defendants Ratliff, Woods, McCarthy, and Hammons.

## II.    REPORT

### A.    Background

August is a State of Michigan prisoner who is confined at the Women's Huron Valley Complex in Ypsilanti, Michigan.  (Doc. #1 at ¶4).  August brings this civil rights action pursuant to 42 U.S.C. §1983 against various medical providers employed (or formerly employed) by the MDOC and Prison Health Services, Inc. ("PHS").  On January 8, 2013, the District Court entered an Opinion and Order of Partial Summary Dismissal, dismissing August's claims against several of the named defendants.  (Doc. #6).  At present, what remains are August's Eight Amendment claims against eight[1] individuals:  the four MDOC Defendants; and PHS employees Pu Qin, Robert Lacy, Maureen Onuigbo, and Michael Szymanski.  (*Id.*).  The District Court also permitted August to proceed with her First Amendment retaliation claim against Defendant Ratliff.  (*Id.* at 8).

In general, August asserts in her complaint that she injured her left shoulder on August 25, 2009, when Defendant Ratliff allegedly forced her to assist in restraining another prisoner, who was having a seizure.  (Doc. #1 at ¶¶28-34).  Defendant Ratliff then allegedly refused to send August to health care, believing that her injuries were not serious enough to warrant medical attention.  (*Id.* at ¶¶28-39).  Most of the other allegations in August's complaint pertain to the medical care she received (or failed to receive) for her shoulder injury, some of which was allegedly provided (or not provided) by Defendants McCarthy, Woods, and Hammons.  August also alleges that Defendant Ratliff retaliated against her for filing grievances by firing her from her prison porter job.  (*Id.* at ¶¶61-62, 70, 74-75, 78).  August sues these defendants in their

---

[1] On July 23, 2013, this Court issued a Report and Recommendation to dismiss August's complaint as against Defendant "RN Tucker" for failure to timely effectuate service.  (Doc. #40).  The District Court adopted this recommendation on August 28, 2013.  (Doc. #42).  Thus, "RN Tucker" is no longer a party to this suit.

personal and official capacities, seeking compensatory, punitive, and emotional distress damages, as well as declaratory and injunctive relief. (*Id.* at "Prayer for Relief," pp. 42-45).

### B.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

3

**C.     Analysis**

In their motion for summary judgment, the MDOC Defendants raise several arguments. First, they argue that August failed to properly exhaust all but one of her claims (specifically, her claim that Defendant Woods improperly denied her medical care in violation of the Eighth Amendment).  (Doc. #24 at 13-18).  Second, they argue that summary judgment is substantively appropriate on August's Eighth Amendment claims because none of the MDOC Defendants were deliberately indifferent to her serious medical needs.  (*Id.* at 19-21).  Third, they argue that summary judgment should be granted on August's First Amendment retaliation claim against Defendant Ratliff because August has failed to make out a *prima facie* case of retaliation.  (*Id.* at 21-23).  Lastly, the MDOC Defendants assert that they are entitled to qualified immunity on all of August's claims.  (*Id.* at 23-25).  Each of these arguments will be addressed below.

> **1.     *Some of August's Claims Are Not Properly Exhausted***

In their motion, the MDOC Defendants first argue that, with respect to all but one of her claims, August failed to properly exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).  (*Id.* at 13-18).

> **a.     <u>The Applicable Law and Grievance Procedure</u>**

Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge her conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes:  it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.* at 93.  Proper exhaustion

4

requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted her claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances"). (Doc. #24 at Ex. 5 (the "Policy," effective July 9, 2007)). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before she can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶B). If the prisoner cannot resolve her dispute with the staff member involved, she has five business days to file a Step I grievance. (*Id.* at ¶¶P, V). "Information provided [in the Step I grievance] is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶R). If the prisoner is dissatisfied with the Step I response, she may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶BB). If the grievant is dissatisfied with, or does not receive, a Step II response, she has ten business days within which to file a final appeal at Step III. (*Id.* at ¶FF).

        b.    <u>August Filed Numerous Grievances,<br>Some of Which Were Not Properly Exhausted</u>

After thoroughly reviewing the parties' submissions, it is apparent that August has filed numerous grievances between the time of her alleged shoulder injury (in August of 2009) and the

filing of her complaint in this case (in August of 2012). There is some dispute between the parties as to which of the relevant grievances have been fully exhausted.

The MDOC Defendants assert in their motion that, during the relevant time period, August pursued seven grievances through Step III of the grievance process, only three of which pertain to the allegations at issue in this lawsuit. (Doc. #24 at 17-18). August, on the other hand, asserts that she pursued eight grievances through Step III during the relevant time period, all of which are relevant to the issues now before the Court. (Doc. #29 at 12). At the summary judgment stage, where all reasonable inferences must be drawn in August's favor, the Court will consider whether each of the eight grievances identified by August has been properly exhausted.

### (1)     Grievance Nos. 09-08-3352-03B and 09-09-3582-03D

Grievance No. 09-08-3352-03B, dated August 26, 2009, pertains to the initial incident that forms the basis of this lawsuit. In that grievance, August alleges that Defendant Ratliff gave her an unreasonable direct order to restrain a fellow inmate, who was in the midst of a seizure, and, as a result, she suffered a left shoulder injury. (Doc. #9 at 23).[2] Similarly, in Grievance No. 09-09-3582-03D, dated September 7, 2009, August alleges that she suffered mental distress and physical injury after "an injury [Ratliff] caused when she gave [August] a direct order to endanger herself by physically trying to contain an inmate during a seizure." (*Id.* at 29). August further alleges in this grievance that, after she injured her shoulder, Ratliff was "extremely hostile" to her and engaged in "threatening, assaultive, degrading and unbecoming behavior." (*Id.*).

Because these two grievances were so closely related, they were combined into one

---

[2] The Court has pieced together evidence pertaining to August's grievances by reviewing materials she submitted with her January 29, 2013 motion for reconsideration of the District Court's order of partial dismissal (Doc. #9) (parts of which August referred to in her summary judgment brief), as well as the parties' summary judgment materials (Docs. #24, 29).

grievance and addressed together.  (*Id.* at 25).  Both grievances were denied at Step I (*Id.*), and August timely appealed each to Step II (*Id.* at 27, 33).  The record does not contain evidence of a Step II response to these grievances.  In their motion for summary judgment, the MDOC Defendants offer affirmative evidence that these grievances were not appealed to Step III.  Specifically, attached to the MDOC Defendants' motion is a "Prisoner Step III Grievance Report," which lists all of the grievances that August pursued to Step III since May of 2009.  (Doc. #24 at Ex. 6).  Neither Grievance No. 09-08-3352-03B nor No. 09-09-3582-03D is listed on this report, which suggests that August did not appeal either of these grievances to Step III.

In her response to the MDOC Defendants' motion, August refers to Step III investigations into both of these grievances, and she specifically directs the Court's attention to "Exhibit-B in Motion for Reconsideration" and "Exhibit C in Motion for Reconsideration" as evidence that she pursued these grievances to Step III.  (Doc. #29 at 7, 9, 10).  In fact, August goes so far as to reference a Step III response to Grievance No. 09-08-3352-03B, indicating that she attached it to her motion for reconsideration as Exhibit B.  (*Id.* at 7).  This purported Step III response was not attached to August's motion for reconsideration, however, nor has this Court located it elsewhere in the record.

What August has produced are two grievance appeal forms, one for Grievance No. 09-08-3352-03B and one for No. 09-09-3582-03D, on which she indicates her desire to appeal these grievances to Step III, explaining that she had received no response at Step II and that there were "unresolved issues."  (*Id.* at 26, 32).  A notation at the bottom of one of these forms, in what appears to be August's handwriting, indicates that the Step III appeals were "timely filed."  (*Id.* at 32).

Where, as here, the MDOC Defendants have carried their initial summary judgment

7

burden of demonstrating that August failed to appeal these grievances to Step III, her submission of these two forms is insufficient. Under the summary judgment standards articulated above, August was required to present affirmative contrary evidence establishing the existence of a material question of fact on the exhaustion issue. *See Wrench,* 256 F.3d at 453; *Alexander,* 576 F.3d at 558. In other words, August needed to present at least some proper evidence that she had, in fact, filed and appealed the relevant grievances through all three steps of the Policy's grievance process. *See Alexander*, 576 F.3d at 558. She fails to satisfy that requirement, as she has not provided any evidence that the forms were, in fact, mailed to the Director's Office, as required by the Policy,[3] nor has she provided evidence that they were received by the MDOC or that she received responses to these purported Step III appeals (despite asserting in her pleadings that such responses existed). In similar situations, courts have held that this lack of evidence compels a finding that the grievances at issue were unexhausted. *See, e.g., Davis v. Caruso*, 2008 WL 4561659, at *6-7 (E.D. Mich. Oct. 10, 2008), *report adopted in relevant part by* 2009 WL 878193, at *9-10 (Mar. 30, 2009) (finding grievance unexhausted where plaintiff produced completed Step III appeal form but had no evidence demonstrating he ever sent that form to Lansing or received a response, and the grievance was absent from the Step III tracking database); *Dean v. Prison Health Servs.*, 2011 WL 1630114, at *6-7 (E.D. Mich. Mar. 28, 2011) (finding grievance unexhausted where Step III grievance report did not list grievance, despite the fact that plaintiff produced a letter from the Ombudsman's office, which may be contacted if the grievant finds a Step III response unsatisfactory); *Hembree v. Carter*, 2013 WL 3946062, at *4 (E.D. Mich. July 31, 2013) (finding grievance unexhausted despite plaintiff's assertion that he

---

[3] This is true despite the fact that, for other grievances, proof exists that Step III appeals were mailed to the Director's Office in Lansing, Michigan, in the form of disbursement authorizations for postage. (Doc. #9-1 at 6; Doc. #9-2 at 15).

filed a Step III appeal where the grievance was not listed in the Step III grievance report).  For these reasons, August has failed to raise a genuine issue of material fact with respect to whether she exhausted her administrative remedies as to Grievance Nos. 09-08-3352-03B and 09-09-3582-03D.

(2)     <em>Grievance No. 09-09-3678-02A</em>

In Grievance No. 09-09-3678-02A, dated September 9, 2009, August alleges that Defendant Ratliff terminated her from her porter job in retaliation for the filing of her prior grievances.  (Doc. #9 at 35).  This grievance was resolved at Step I, as August was returned to her prior job assignment.  (<em>Id.</em> at 37).  Indeed, August acknowledges that this was a "positive resolution," that she was reinstated with full back pay, and that she did not pursue this grievance to Step II or Step III.  (Doc. #29 at 9; Doc. #1 at ¶¶72-73).  If August was somehow dissatisfied with the resolution of this grievance, she was required by the Policy to pursue the grievance through Step III.  Because she did not, Grievance No. 09-09-3678-02A is unexhausted.[4]

(3)     <em>Grievance No. 09-09-3692-03F</em>

In Grievance No. 09-09-3692-03F, dated September 10, 2009, August alleges that

---

[4]  Additionally, even if August had properly exhausted her claim that Defendant Ratliff terminated her employment as a porter in retaliation for her filing of grievances, such a claim would fail on the merits.  Under Sixth Circuit law, to establish a claim for First Amendment retaliation, brought pursuant to 42 U.S.C. §1983, the plaintiff must show that:  (1) she engaged in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action.  <em>See Thaddeus-X v. Blatter</em>, 175 F.3d 378, 394 (6th Cir. 1999).  Here, assuming that the grievances filed by August constitute protected conduct, she cannot show that she suffered an adverse action as a result of that protected conduct.  Indeed, by August's own admission, the very action she contends led to retaliation against her (the filing of grievances) actually resulted in an investigation, which spurred August's reinstatement with back pay to her porter position.  (Doc. #29 at 9).  Thus, August's First Amendment retaliation claim fails on the merits as well.  <em>See Robinson v. Jones</em>, 2006 WL 726673, at *4 (D. Conn. Mar. 20, 2006) (dismissing First Amendment retaliation claim where alleged adverse action was remedied through grievance process).

9

Defendant Ratliff "refused to open [her] door for breakfast." (Doc. #9 at 49). At Step I, it was determined that August's allegations could not be substantiated; nevertheless, Ratliff was issued a reminder to abide by prison policies and maintain professionalism at all times. (*Id.* at 50). Dissatisfied with this response, August appealed to Step II (Doc. #9-1 at 1, 4); however, the record does not contain evidence of Step II or Step III responses to this grievance. Moreover, the MDOC Defendants again argue that August did not pursue this grievance to Step III, as it is not listed on the Step III Grievance Report. (Doc. #24 at Ex. 6).

August asserts in her complaint that she appealed this grievance to Step III. (Doc. #1 at ¶83). The record does contain a "Grievance Appeal Form," which contains August's Step II appeal (dated April 3, 2010). (Doc. #9-1 at 1). At the bottom of this form, under the section labeled "Step III – Reason for Appeal," it states, "unresolved issues. No response to Step II." (*Id.*). However, there is no indication in the record that August ever submitted this Step III appeal to the Director's Office, as required by the Policy, nor has she provided evidence that it was received by the MDOC.

Although the record does contain a February 22, 2011 letter, drafted by August, indicating that she is "waiting for a Step III response" to this grievance (Doc. #9-1 at 5), this letter is not evidence that August actually mailed her Step III appeal to the Director's Office. Moreover, with this letter is an MDOC "Disbursement Authorization/Catalog Order Form," indicating that August authorized the disbursement of $0.44 for postage in conjunction with the mailing of this February 2011 letter. (*Id.* at 6). August has produced no similar disbursement authorization associated with her purported appeal of Grievance No. 09-09-3692-03F to Step III. Thus, for the same reasons as noted above, *supra* at 8, this February 2011 letter and disbursement authorization do not constitute evidence which rebuts that offered by the MDOC

10

Defendants.

In sum, the MDOC Defendants have carried their initial summary judgment burden of demonstrating that August failed to appeal this grievance to Step III, and her unsupported assertion to the contrary is simply insufficient.  *See Davis*, 2008 WL 4561659, at *6-7; *Dean*, 2011 WL 1630114, at *6-7.  For these reasons, August has failed to raise a genuine issue of material fact with respect to whether she exhausted her administrative remedies as to Grievance No. 09-09-3692-03F.

### (4)      Grievance No. 10-04-1935-12D1

In Grievance No. 10-04-1935-12D1, dated April 14, 2010, August grieves Defendant Woods for failing to treat her left shoulder pain (specifically, for failing to take x-rays of this shoulder).  (Doc. #24-7 at 17).  The record contains evidence that, after this grievance was denied at Step I, August timely appealed to Step II and, ultimately Step III.[5]  (*Id.* at 12-13, 23). The parties agree, then, that this grievance was properly exhausted.

### (5)      Grievance No. 10-09-4350-12F

In Grievance No. 10-09-4350-12F, dated September 22, 2010, August alleges that Defendants Hammons and McCarthy failed to renew medication prescribed for her left shoulder pain.  (Doc. #9-1 at 43).  August's Step I grievance was received on September 28, 2010.  (*Id.* at 44).  It appears that, at Step I, August's grievance was considered on the merits:  the Step I grievance response, dated March 4, 2011, indicates that August's electronic medical record was reviewed, and she had refused treatment on the date in question when she was informed she would be billed a co-pay.  (*Id.* at 45).  Consequently, this grievance was considered "resolved,"

---

[5] Indeed, August submitted the Step III response she received to Grievance No. 10-04-1935-12D (Doc. #9-1 at 8).  It is worth noting that she did not submit similar responses for the other grievances (discussed above and below) that do not appear on the Step III Grievance Report notwithstanding her contention that she appealed them to Step III.

and August was encouraged to use the prison's "kite" process to seek healthcare services for her medical needs.  (*Id.*).

In the meantime, while August's Step I grievance was pending, it appears that she submitted a Step II appeal, which was dated November 14, 2010, and received on November 22, 2010.  (*Id.* at 46, 47).  The record contains a Step II response, dated January 26, 2011, in which the merits of this grievance again were addressed and August again was advised to use the kite process for any medical needs.  (*Id.* at 48).  August then apparently filed a Step III appeal on or about February 22, 2011.  (Doc. #24-7 at 25).  The record contains a Step III Grievance Response, dated March 21, 2011, which states, in relevant part:

> Pursuant to policy, this grievance is rejected as untimely filed at the Step III appeal.  The grievant's Step III appeal was to be received by 12/7/2010, however it was not received until 3/8/2011.  The grievant does not provide appropriate support for this delay.

(*Id.* at 24).

Because this grievance was denied as untimely filed at Step III, the MDOC Defendants now take the position that it was not properly exhausted.  (Doc. #24 at 18).  However, there are several problems with this argument.  First, the fact that the Step II response was dated January 26, 2011, while the Step I response was dated March 4, 2011, is perplexing.  Second, the Step III denial asserts that August's "Step III appeal was to be received by 12/7/2010"; however, her Step II response was dated January 26, 2011, so one is left to wonder how August's Step III appeal could have been due more than a month before she received her Step II response.[6]  Finally,

---

[6] To the extent the MDOC Defendants are arguing that August's Step III appeal was untimely pursuant to the underlined portion of the following sentence from paragraph FF of the Policy, which provides that a Step III appeal must be submitted "within ten business days after receiving the Step II response <u>or, if no response was received, within ten business days after the date the response was due, including any extensions</u>," (Doc. #24-6 at ¶FF) (emphasis added), that argument lacks merit.  August's Step II grievance appeal receipt indicates that a response was due no later than December 13, 2010.  (Doc. #9-1 at 47).  Thus, the Court sees no basis for the

12

contrary to the Step III response's statement that August did not "provide appropriate support for her delay," August asserts in her Step III appeal, dated February 22, 2011, that she had not yet received a Step II response (indeed, August sent out a kite on February 7, 2011, indicating that she had not even received a receipt for this appeal). (Doc. #24-7 at 25, 29). For all of these reasons, the MDOC's denial of August's grievance on timeliness grounds is suspect. Where, as here, defendants are asserting that a grievance was not properly or timely filed, it is their burden to establish that the grievance was procedurally defective. *See Lucas v. Caruso*, 2008 WL 647611, at *3 (W.D. Mich. Feb. 13, 2008) (citing *Woodford*, 548 U.S. at 81). Given the facts set forth above, there at least exists a genuine issue of material fact as to whether August properly exhausted Grievance No. 10-09-4350-12F.

*(6)      Grievance No. 11-02-0525-12D1*

In Grievance No. 11-02-0525-12D1, dated January 27, 2011, August alleges that Defendant Hammons failed to prescribe sufficient pain medication for her left shoulder injury. (Doc. #9-2 at 21). This grievance was denied at Step I on February 28, 2011, and August's Step II appeal was received on March 10, 2011. (*Id.* at 22, 23). A Step II response was issued on March 17, 2011, in which the grievance was denied because August had been repeatedly evaluated by medical personnel, and she simply disagreed with their plan of care. (*Id.* at 24). Although August vaguely asserts in her response brief that this grievance was properly exhausted (Doc. #29 at 14), the MDOC Defendants' "Prisoner Step III Grievance Report" does not list this

---

subsequent denial of her grievance at Step III on the basis that it "was to be received by 12/7/2010." (Doc. #24-7 at 24). Moreover, the Court rejects the notion that the due date for August's Step III appeal could be ten business days after the administrator's Step II response was due unless, the same day the administrator received her Step II appeal (which receipt would trigger the ten business day clock), August was advised of that receipt. To apply the provision to an inmate who lacks contemporaneous knowledge of the administrator's receipt of the Step II grievance appeal would essentially require her to guess her Step III appeal's due date, a result the Court will not countenance.

grievance as having been received at Step III (Doc. #24 at Ex. 6), and August has not come forward with any evidence to the contrary.  For these reasons, August has failed to raise a genuine issue of material fact with respect to whether she exhausted her administrative remedies as to Grievance No. 11-02-0525-12D1.  *See supra* at 8*; see also Davis*, 2008 WL 4561659, at *6-7; *Dean*, 2011 WL 1630114, at *6-7.

*(7)     Grievance No. 12-07-3204-12D1*

In Grievance No. 12-07-3204-12D1, dated July 7, 2012, August alleges that, between May 8, 2012 and July 5, 2012, Defendant Hammons failed to provide adequate medical care for her left shoulder injury.  (Doc. #9-2 at 27).  The Step I response, dated July 23, 2012, indicates that the grievance investigation – which involved a discussion with August and a review of her electronic medical record – revealed that August had last been seen by nursing staff on July 5, 2012, with complaints of frequent migraines and continued shoulder pain.  (*Id.* at 38).  At the time the Step I response was issued, an appointment had been scheduled for August to be evaluated by a medical provider, and the grievance remained pending.  (*Id.*).  On August 7, 2012, August submitted a Step II appeal (*Id.* at 39), which was received on August 8, 2012 (*Id.* at 40).  On August 22, 2012, a Step II response was issued, again addressing the merits of the grievance and indicating that August still had an upcoming appointment scheduled with a medical provider and that the grievance remained pending.  (*Id.* at 41).

On August 29, 2012, August timely submitted a Step III appeal.  (*Id.* at 43).  On January 31, 2013, a Step III response was issued which provided, in relevant part:

> A Step I grievances [sic] is to be submitted within five business days after the grievant has attempted to resolve the issue, which was to occur within two business days of becoming aware of a grievable issue.  The grievant presents a date of incident as June 19, 2012, however did not file her said Step I grievance until August 8, 2012.  The grievant is not consistent with the requirements outlined within PD 03.02.130.

14

(Doc. #24-8 at 1).  Thus, August's Step III appeal was denied as untimely and her grievance was rejected.

Because this grievance was denied at Step III as untimely, the MDOC Defendants now take the position that it was not properly exhausted.  (Doc. #24 at 17).  However, there are two problems with this argument.  First, August filed her Step I grievance on July 7, 2012, not August 8, 2012, as the Step III response indicates.[7]  (Doc. #9-2 at 27).  Second, the grievance does not "present[] a date of incident as June 19, 2012."  Rather, although the grievance does mention "6/19/12," along with several other dates, it also clearly indicates that August was last seen by a nurse on July 5, 2012 – just two days before she filed the grievance at issue.  (*Id.*).  It further indicates that, during that July 5 nurse visit, August attempted to address the "still unresolved medical issues" but was unable to do so.  (*Id.*).  Thus, August has come forward with evidence that Grievance No. 12-07-3204-12D1 was timely filed in accordance with the Policy, and there is at least a genuine issue of material fact as to whether August properly exhausted this grievance.  *See Lucas,* 2008 WL 647611, at *3.

### c.   Summary of August's Viable Claims

In summary, a genuine issue of material fact exists as to whether August properly exhausted the following three grievances:

- Grievance No. 10-04-1935-12D, in which August grieves Defendant Woods for failing to treat her left shoulder pain (specifically, for failing to ensure that x-rays were taken of this shoulder).  (Doc. #24-7 at 17).

- Grievance No. 10-09-4350-12F, in which August alleges that Defendants Hammons and McCarthy failed to renew medication prescribed for her left shoulder pain.  (Doc. #9-1 at 43).

- Grievance No. 12-07-3204-12D1, in which August alleges that Defendant Hammons failed to provide adequate medical care for her left shoulder injury.  (Doc. #9-2 at 27).

---

[7] Indeed, the records reflect that this grievance was received on July 10, 2012.  (Doc. #9-2 at 37).

15

Because none of the claims asserted against Defendant Ratliff have been properly exhausted, August's complaint should be dismissed as to her. The merits of the claims asserted in these three grievances, as to Defendants Woods, Hammons, and McCarthy, will be addressed below.

        2.      *Summary Judgment is Appropriate on August's Eighth Amendment Claims*

The MDOC Defendants argue that, even if August properly exhausted some of her claims, summary judgment is appropriate on her claims of deliberate indifference in violation of the Eighth Amendment. (Doc. #24 at 19-21).

August brings her claims under 42 U.S.C. § 1983, which creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A Section 1983 claim must allege two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). August argues that the MDOC Defendants' respective failures to provide the medical care referenced in the three grievances described above violated her rights under the Eighth Amendment to be free from cruel and unusual punishment. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit recently explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to her serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir 2012) (internal citations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer*, 511 U.S. 825, 837 (1994). As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted).

August's own statements, as well as the record evidence, demonstrate that, under these

standards, the MDOC Defendants were not deliberately indifferent to a serious medical need.

For example, August asserts in her complaint that, just three days after she allegedly injured her

left shoulder, she saw Defendant McCarthy, who examined her shoulder, told her she might have

a torn rotator cuff,[8] and referred her to the doctor.  (Doc. #1 at ¶54).[9]  Defendant McCarthy put

August's left arm in a sling; told her to use an ice pack; put her on light duty for about two

weeks; instructed her not to lift, push, or pull with her left arm; and referred her to a physician.

(*Id.*).  Since that time, and over the last three years, August has been seen by several nurses and

doctors, on multiple occasions, and obtained treatment for her left shoulder pain.  (Doc. #1 at ¶¶

58, 87-88, 99, 102-05, 117, 130, 132, 139, 142, 157, 162, 167, 169, 171, 181).

As for the specific claims of denial of adequate medical care that August has fully

exhausted, the same holds true.  For example, August alleges that Defendant Woods was

deliberately indifferent to a serious medical need when she failed to ensure that x-rays were

taken of her left shoulder (Grievance No. 10-04-1935-12D).  (*Id.* at ¶92).  The facts do not bear

this out.  In a sworn affidavit, Woods indicates that, as a registered nurse, she does not have the

---

[8] Although Defendant McCarthy denies telling August that she possibly had a torn rotator cuff (Doc. #24-4 at ¶3), the Court accepts this allegation as true at the summary judgment stage.

[9] Any argument that this three day delay gives rise to a deliberate indifference claim lacks merit. First, there is no indication that Defendant McCarthy knew of August's injury prior to seeing her three days later.  Second, delays of that magnitude to treat a condition like the one August experienced do not demonstrate deliberate indifference. *See, e.g.*, *Loukas v. Gundy*, 70 F. App'x 245, 247 (6th Cir. 2003) (delay of 23 days to x-ray foot, determine a minor fracture, and prescribe crutches and pain medication did not rise to deliberate indifference); *Owens v. Jones*, 2006 WL 1275396, at *1-3 (W.D. Mich. May 8, 2006) (one year delay in completing x-rays of prisoner's back does not give rise to Eighth Amendment violation); *Ruff v. Health Care Admin'r*, 2011 WL 1344625, at *2-4 (M.D. Pa. Apr. 8, 2011) (two year delay in ordering x-ray of prisoner's ribs, which were found to be fractured, was "regrettable" but did not rise to the level of an Eighth Amendment violation).  Finally, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Loukas*, 70 F. App'x at 247 (citing *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).  August has provided no such documentation.

2:12-cv-13775-LJM-DRG   Doc # 45   Filed 09/19/13   Pg 19 of 23   Pg ID 751

authority to order x-rays (Doc. #24-3 at ¶3), and August does not dispute this fact. Moreover, by August's own admission, x-rays were ordered by a physician on March 31, 2010, and the x-rays were taken just over two weeks later, on April 16, 2010. (*Id.* at ¶88; Doc. #29 at 64). Although such a delay could potentially violate an inmate's Eighth Amendment rights if her condition arose "from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention" immediately, August's alleged injuries did not rise to that level. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899-900 (6th Cir. 2004),

Likewise, August alleges that Defendants Hammons and McCarthy were deliberately indifferent when they failed to renew medication (Lodine) prescribed for her left shoulder pain (Grievance No. 10-09-4350-12F). (Doc. #1 at ¶¶117-19). In a sworn affidavit, Defendant McCarthy asserts that, as a registered nurse, she is not licensed to prescribe medication (Doc. #24-4 at ¶6), and August has offered no evidence to the contrary. It follows that the same holds true for Defendant Hammons, who also is a registered nurse. (Doc. #24-5 at ¶1). Moreover, the evidence establishes that August was seen in healthcare on numerous occasions during this time period, and that treatment was provided, including an extra pillow, range-of-motion exercises, and over-the-counter medication therapy. (Doc. #1 at ¶¶117, 130, 132, 139). Although this might not have been the exact treatment August would have preferred, it belies allegations of deliberate indifference. The law in this Circuit is clear that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs are not sufficient to rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004).

In addition, August alleges that, on June 19, 2012, Defendant Hammons failed to provide adequate medical care for her left shoulder (Grievance No. 12-07-3204-12D1). (*Id.* at ¶167).

19

Specifically, August asserts that Defendant Hammons denied her request to see a physician, saying that as a "chronic care" patient, August could only see a physician once a year. (*Id.*). Defendant Hammons denies making this statement. (Doc. #24-5 at ¶12). More importantly, however, Defendant Hammons explains, in a sworn affidavit, that August reported at that June 19, 2012 visit that her pain was only 3/10 on the pain scale (whereas it previously had been 9/10). (*Id.*). This self-report, as well as the physical assessment performed by Defendant Hammons, led Hammons to conclude that August was demonstrating "significant improvement," and "the current plan of care was showing success." (*Id.*). In Defendant Hammons' medical judgment, the best course of action was to "continue with the current Medical Service Provider's plan of care," which consisted of stretching exercises, gentle massage, and warm compression on the shoulder. (*Id.*). Again, then, August's allegations concerning this nurse visit merely evidence disagreement with her physician's prescribed course of treatment, which cannot support a claim for deliberate indifference. *See Umbarger*, 93 F. App'x at 736.

Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). While the former cases may evidence the type of culpability required to state a deliberate indifference claim, the latter amount to assertions of medical negligence and do not satisfy the requisite subjective component of such claims. *Id.* Indeed, courts have recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also*

*Umbarger*, 93 F. App'x at 736.

Here, the allegations contained in August's complaint and response brief establish that her concerns about her left shoulder were repeatedly addressed, and the evidence demonstrates that she received ongoing treatment for this condition. Thus, the MDOC Defendants did not ignore August's concerns; rather, they took action to address her issues (albeit perhaps not as quickly or in the exact fashion that August would have liked). As a result, August cannot succeed on a deliberate indifference claim against the MDOC Defendants. *See Alspaugh*, 643 F.3d at 169; *Allison*, 2009 WL 2885088, at *6; *Umbarger*, 93 F. App'x at 736. For this reason, summary judgment should be granted in favor of the MDOC Defendants on August's Eighth Amendment claims.

### 3.      *August's Claims Also Are Barred by the Doctrine of Qualified Immunity*

The MDOC Defendants also argue that because their actions were objectively reasonable under the circumstances, and because they did not violate August's clearly established constitutional rights, August's claims are barred by the doctrine of qualified immunity. (Doc. #24 at 23-25).

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and, therefore the privilege is an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2)

the right was clearly established.  *See Saucier*, 533 U.S. at 201.  In conducting this inquiry, the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).

For all of the reasons discussed above, August has not established that the MDOC Defendants violated a clearly established constitutional right and, thus, cannot satisfy either prong of the qualified immunity standard.  Thus, summary judgment is appropriate in favor of the MDOC Defendants on the basis of qualified immunity as well.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [24] be **GRANTED** and August's complaint be dismissed as against Defendants Ratliff, Woods, McCarthy, and Hammons.

Dated: September 19, 2013                          s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 19, 2013.

<u>s/Deborah J. Goltz for Felicia M. Moses</u>
FELICIA M. MOSES
Case Manager