UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY AUGUST, #714643,

     Plaintiff,

v.

PATRICIA CARUSO, *et al.*,

     Defendants.

Case No. 12-13775
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [84] GRANTING THE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [65], AND DENYING PLAINTIFF'S MOTION TO COMPEL [88], MOTION TO STAY [89], MOTION FOR EXTENSION OF DISCOVERY [90], AND MOTION FOR APPOINTMENT OF COUNSEL [91]**

---

Plaintiff Tracy August, a Michigan prisoner, brought this lawsuit *pro se* pursuant to 42 U.S.C. § 1983. August's claims arise from a 2009 incident in which she was ordered to restrain another inmate who was having a seizure. August says that she injured her left shoulder during this incident and that ever since, Defendants have failed to provide her with constitutionally adequate medical care. The remaining Defendants in the case, Dr. Robert Lacy, Dr. Maureen Onuigbo, Dr. Pu Qin, and Dr. Michael Szymanski ("Medical Defendants"), filed a Motion for Summary Judgment on May 7, 2014. (Dkt. 65.) Magistrate Judge David R. Grand entered a Report and Recommendation to grant the Motion. August filed objections (Dkt. 86) and the Medical Defendants responded (Dkt. 87). Shortly thereafter, August filed four motions regarding case management and the appointment of counsel. (Dkts. 88–91.) The Court is not persuaded by August's objections and will therefore ADOPT the Report, GRANT the Motion for Summary Judgment, and DENY August's other motions as moot.

2:12-cv-13775-LJM-DRG   Doc # 92   Filed 03/23/15   Pg 2 of 16   Pg ID 1867

## I.  BACKGROUND

August filed her Complaint on August 27, 2012, three years after she was injured while obeying an order to restrain another inmate who was having a seizure. (Dkt. 1.) She alleged that Michigan Department of Corrections ("MDOC") staff, through their response to her shoulder injury, violated her Eighth Amendment rights (Counts I, IV–VI), violated their own Policies and Procedures (Count II), retaliated against her (Count III), and violated her First Amendment Rights (Count VII). She filed an Amended Complaint on September 10, 2012, in which she amended her Statement of Facts but did not assert any new causes of action. (Dkt. 5.) The case was referred to Magistrate Judge David R. Grand for all pretrial matters.

August named various MDOC officials, officers, and medical staff members in her Complaint, but many have since been dismissed from the case. (*See* Dkts. 5, 42, 53.) The remaining four Defendants filed this Motion for Summary Judgment on May 7, 2014. (Dkt. 65.) Magistrate Judge Grand entered his Report and Recommendation to grant the motion on January 9, 2015. (Dkt. 84.)

## II.  STANDARD OF REVIEW

This Court conducts a *de novo* review of those portions of the Report and Recommendation to which August has objected. 28 U.S.C. § 636(b). The Court need not perform a de novo review of the Report's unobjected-to findings. *See Schaefer v. Modelski*, No. 13-CV-13669, 2014 WL 3573270, at *1 (E.D. Mich. July 21, 2014) ("Although a court must review timely objections to a magistrate judge's report and recommendation, a court may adopt, reject, or amend the portions of a report and recommendation to which no party properly objects." (citing Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985))); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The

Court is not obligated to review the portions of the report to which no objection was made." (citing *Arn*, 474 U.S. at 149–52)).

Because the Medical Defendants seek summary judgment on claims for which August bears the burden of persuasion at trial, they can discharge their initial summary-judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support [August's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the Medical Defendants do so, August "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of August's claims to a jury, or whether the evidence is so one-sided that the Medical Defendants must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). As noted at the outset, in making this determination, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to August. *Matsushita*, 475 U.S. at 587.

## III. ANALYSIS

August's remaining claims in this case arise under 42 U.S.C. § 1983 and the Eighth Amendment. "A section 1983 claimant must show 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Savoie v. Martin*, 673 F.3d 488, 493–94 (6th Cir. 2012) (quoting *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996)). The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To

demonstrate an Eighth Amendment violation based on medical mistreatment, a prisoner must satisfy both objective and subjective components. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). "The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore*, 390 F.3d at 895. "The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* (internal quotation marks omitted).

### A.  Objection 1: Discussion of Medical History

August's first objection is generally concerned with the Report's discussion of her injury and certain aspects of her treatment and symptoms. She says the treatment she received was delayed and inadequate given the pain she was experiencing (she also discusses the recording of her reports of pain, an argument the Court will address in relation to August's second objection.)

August first argues that "the description of her injury" in the Report is incorrect. (Dkt. 86, Obj., at 1.) Far from "merely [being] 'pinned against a railing,'" August says that the events giving rise to the injury were much more serious: as she attempted to restrain a seizing inmate, her arm was caught between two railings and ripped upwards as she fell to the ground. (*Id.*) But the Medical Defendants do not dispute that August's shoulder injury was caused by a "traumatic event." (Dkt. 87, Resp., at 2.) Rather, the dispute in this case and the issue the Court must examine is whether the Medical Defendants' response suggested their "deliberate indifference" to August's injury. And August does not argue that she was denied treatment based on the Medical Defendants' assessment of the events giving rise to the injury. Instead, she is disputing the treatment they prescribed following examination of her injured shoulder.

August next turns to the timing of her treatment in relation to the event. It is undisputed that she was injured on August 25, 2009. (Def.'s Mot. at 2.) She says that she was not seen by

4

any medical practitioner until her visit to a nurse on August 28, 2009—a three-day delay. (Obj. at 2.) She also says that it took until March 2010 for her to be seen by a doctor. (*Id.*) "For an Eighth Amendment claim based on an alleged delay in treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay." *Nur v. Anderson*, 17 F. App'x 369, 370 (6th Cir. 2001) (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). But "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore*, 390 F.3d at 899–900 (citations omitted).

In her response brief, August said that on the day of the incident, she submitted an "urgent kite to healthcare" regarding her injury. (Dkt. 78, Pl.'s Resp., at 2.) Although August attached several healthcare kites to her response, it does not appear that the August 25 kite is part of the record. (*See* Resp. Ex. G.) Notes from the August 28 visit state that August was seen on a "nurse referral," but it is unclear when the nurse referral occurred. (Dkt. 67-3 at PageID 1271.) August says that in the intervening three days, she could not move her left arm and her pain was exacerbated because she was forced to climb into and out of a top bunk without a ladder. (Pl.'s Resp. at 2.) But there is simply no verifying medical evidence establishing the detrimental effect of any delay in treatment. Also, the Medical Defendants argue that August cannot show that they were responsible for her delay in care. (Resp. at 3.) "[P]roximate causation is an essential element of a § 1983 claim for damages." *Horn by Parks v. Madison Cty. Fiscal Ct.*, 22 F.3d 653,

659 (6th Cir. 1994); *see also Ellis v. City of Cleveland*, 883 F.2d 74 (6th Cir. 1989) (unpublished) ("If causation is not alleged or apparent, a plaintiff can not prevail as causation is always a necessary element of all § 1983 claims."). August has not alleged that any of the Medical Defendants were present at the time of her injury on August 25, nor does the record reflect that any of the Medical Defendants were involved in the three-day delay in treatment. To the contrary, as the Court recognized in an earlier order, it is the responsibility of the nurse on duty at the Nurse Sick Call to schedule appointments and refer patients to Medical Service Providers. (Dkt. 24-5, Hammons Aff. at ¶¶ 3.) Moreover, Defendant Lacy did not work at August's facility until January 2010 (Dkt. 65-3, Lacy Aff. at ¶ 1), Defendant Qin did not see August until October 2011 (Dkt. 65-4, Qin Aff. at ¶ 2), Defendant Onuigbo did not see August until March 2010 (Dkt. 65-5, Onuigbo Aff. at ¶ 2), and Defendant Szymanski did not see August until November 2010 (Dkt. 65-6, Szymanski Aff. at ¶ 2). To the extent August is alleging an Eighth Amendment violation based on a delay in care, the Medical Defendants are not the proper defendants.

Finally, August describes a delay in getting "bottom bunk detail" and cortisone injections that had been ordered by Dr. Lacy in August 2012, after August filed her Complaint. (Obj. at 6.) While the Court is troubled by the apparent "glitch" in the execution of these medical orders, the Court reaches the same conclusion as the Magistrate Judge: these allegations were not part of the Complaint, Amended Complaint, or the summary-judgment briefing and therefore are not properly addressed here. *See* Fed. R. Civ. P. 15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.").

### B. Objection 2: Regarding the Report's Discussion of Medical Records

August next objects to the Magistrate Judge's finding that while she disputed the accuracy of the medical records attached to the motion, she "fail[ed] to identify any specific record that she believes is missing or altered, and fails to provide any evidence which would establish any particular record's inaccuracy." (Obj. at 7 (citing Report at 3 n.1).) She disputes the records in two specific ways: (1) they did not contain her reports of pain from her medical kites; and (2) Dr. Lacy's notes regarding her alleged manipulation of the shoulder tests are "suspicious" because the exam was "extremely brutal." (Obj. at 7.)

As to August's first argument, federal courts recognize the principle that "complete and accurate medical records" are a "necessary component of minimally adequate medical care[.]" *Adams v. Tilton*, No. 107CV00791GSAPC, 2009 WL 2915100, at *11 (E.D. Cal. Sept. 9, 2009) (citing cases). For example, in *Burks v. Teasdale*, 492 F. Supp. 650, 662 (W.D. Mo. 1980), the district court issued injunctive relief regarding, among other practices, the medical recordkeeping at the Missouri State Penitentiary. The records, as described in the testimony of a medical doctor who had reviewed them, created "danger and a potential for tragedy" due to their incompleteness and underreporting of follow-up care. The district court agreed, holding that the records created a "grave risk of unnecessary pain and suffering[.]" *Id.* at 676. District courts within this circuit have observed that "Eighth Amendment violations stemming from inadequate, incomplete, inaccurate, or mislaid medical documents are typically reserved for claims alleging systematic inadequacies in a jail's or prison's systems of medical record keeping." *Beene v. Rasseki*, No. 3:10-0285, 2010 WL 2196597, at *7 (M.D. Tenn. May 27, 2010) (quoting *Davis v. Caruso*, 2009 WL 878193, at *2 (E.D. Mich. Mar. 30, 2009)).

Here, even if one accepts August's conclusory assertion that the prison healthcare system is deliberately underreporting the filing of all medical complaints to protect their "interests in profits" (*see* Obj. at 4), she has not shown that her allegedly incomplete records posed a grave risk of unnecessary pain and suffering. In fact, the medical records are largely consistent with August's kites. For example, on December 16, 2010, August kited for pain "jolts" and "muscle spasms and stiffness." (Obj. at 4.) A nurse protocol entered on January 3, 2011, reflects August's self-reports of "up the wall" pain that was "shooting . . . up her neck" and "muscle spasms." (Dkt. 67-2 at PageID 1215.) Furthermore, August saw all of the Medical Defendants in person and reported similar symptoms during those visits. It may be that the medical records do not reflect every instance of pain that August experienced, but they adequately reflect her ongoing symptoms and follow-up treatment over the three-year period at issue in this case. At minimum, they did not create a "grave risk of unnecessary pain and suffering."

As to Dr. Lacy's examination of August, a painful exam does not rise to the level of a constitutional violation unless it causes the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Discomfort, and even pain, during routine medical exams have been held not to violate the Eighth Amendment. *See, e.g.*, *Brown v. Deparlos*, 492 F. App'x 211, 216 (3d Cir. 2012) (holding that plaintiff's assertion that a physician twisted his head during an examination did not state an Eighth Amendment violation because "[a]llegations of medical malpractice" and "mere disagreement as to the proper" treatment did not demonstrate deliberate indifference or unnecessary and wanton infliction of pain); *Tate v. Cate*, No. 1:09-CV-00770 JLT PC, 2010 WL 4879216, at *5 (E.D. Cal. Nov. 23, 2010) (asking plaintiff to assume "painful positions" for examination did not state an Eighth Amendment violation because the physician was not aware of a "substantial risk of serious harm"); *cf. Johnson v. Rush*, No. 07-4243, 2009 WL 237187, at

*1 (3d Cir. Feb. 3, 2009) (holding that a plaintiff had stated an Eighth Amendment claim when he alleged that a physician performed a forceful rectal exam that could have been deemed "an act of sexual abuse," which deterred the inmate from seeking further care).

Here, while August alleges that she experienced "extreme pain" during the exam (Obj. at 8) and that Dr. Lacy "dug his fingers into [her] back and shoulder blade" during the exam, Dr. Lacy avers that he utilized standard examination techniques during the visit. (Lacy Aff. at ¶ 14.) He noted that "[s]ome discomfort is unfortunately necessary when tests are performed on a patient's joints, such as the shoulder." (*Id.*) It is unfortunate that August experienced pain during the exam, but pain experienced during a standard examination does not rise to the level of a constitutional violation.

## C. Objection 3: Conclusions Regarding Appropriate Treatment

August next emphasizes that "there was no pain management whatsoever for more than 3-years," and that her injury "was only exacerbated by being on a top bunk." (Obj. at 10.)

The Sixth Circuit "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). But it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

The extensive medical records in this case reflect that August was seen multiple times throughout the three-year period at issue in this case. Although the Defendants did not reach a definitive diagnosis, they did rule out the most serious possibility of a torn rotator cuff. (*See* Lacy

Aff. at ¶ 32.) And August received treatment—Ibuprofen, Naproxen, instruction on exercises and massage, extra pillows, and cortisone injections—that all of her treating medical providers agreed was appropriate for her clinical presentation. (*See id.*; Qin Aff. at ¶ 5–6; Onuigbo Aff. at ¶ 4–6; Szymanski Aff. at ¶ 3–5.) While August may have "desired more aggressive treatment, [she] was at no point denied treatment." *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (holding that a prisoner who sustained a neck injury and was prescribed only a soft cervical collar and Motrin for ten months before having surgery at another facility had not stated an Eighth Amendment violation with respect to adequate treatment). "[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). August's argument that she could not afford the pain medication was not raised in her response to the Motion for Summary Judgment and is therefore waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

### D.  Objection 4: August's Requests for Additional Medical Records

August protests the grant of summary judgment at this time because she claims she has been "extremely prejudiced" by her prisoner status; specifically, that she has not been given access to medical records that she needs in order to litigate the case. (Obj. at 11.)

Defendants argue that August did not make this argument in response to their Motion for Summary Judgment and so she has waived it. (Resp. at 10.) The Sixth Circuit has noted that "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr*, 200 F.3d at 902 n.1. That is to say, "issues raised for the first time in objections to [a] magistrate judge's report and recommendation are deemed waived." *Id.* (citing *Marshall v. Chater*, 75 F.3d

1421, 1426–27 (10th Cir. 1996)). Here, while August argued that the medical records that the Medical Defendants submitted were inaccurate (*see* Dkt. 78, Pl.'s Resp. Br., at 7), it does not appear that she raised the issue of their completeness. Thus, this argument was not presented to the Magistrate Judge in connection with the Medical Defendants' Motion for Summary Judgment, is waived, and will not be addressed here.

The Court notes that August previously filed a Motion to Compel to the same effect as her objection here. (Dkt. 59.) Magistrate Judge Grand denied the motion, commenting that given the Medical Defendants' Motion for Summary Judgment with its "nearly three hundred pages of August's medical records," August should have already received a "substantial" volume of the requested documents. (Dkt. 70 at 2–3.) Indeed, it was "unclear whether additional relevant medical records even exist[ed]." (*Id.* at 3.) Nonetheless, the Magistrate Judge granted August an additional 21 days to "request copies of her medical records by (1) properly serving a subpoena on the MDOC, and/or (2) properly serving a request for production on the Medical Defendants." (Id. at 4.) It does not appear that August pursued either of these options. Nor does she explain whether she seeks medical records aside from those attached to the Medical Defendants' Motion for Summary Judgment.

"[P]ro se parties must follow the same rules of procedure that govern other litigants." *In re Gambino-Gorsline*, No. 03-73080, 2006 U.S. Dist. LEXIS 14876, at *2 (E.D. Mich. Mar. 31, 2006); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits."). Despite the Magistrate Judge's suggestions for procedural devices August could use to obtain the medical records she sought, August did not

pursue any of these potential avenues. And she has had many months to do so. The objection, even if not waived as discussed above, does not persuade.[1]

### E.  Objection 5: Attempt to Amend Complaint

August states that she "attempted to file an Amendment to this Complaint in September of 2013" that included "new injuries" but that certain MDOC officers confiscated or otherwise lost her drafts and legal materials. (Obj. at 11.) She attached to her Objections two grievance forms and a letter in which she explained that she had two boxes full of legal material that were either lost or misplaced when she was moved to a different unit in the prison. (*Id.* at Ex. 2.) The Court is not unsympathetic to this occurrence, which August says has "cost her the ability to present a fair showing of her allegations and new injuries." (Obj. at 11.) But the relief August is seeking in this objection is unclear. It does not appear that she sought leave to amend at any point after September 2013. (*See* Dkt.) And to the extent that August objects to the Magistrate Judge's disposition of her one-sentence request to add claims regarding her bottom-bunk detail, the Court is not persuaded. August cannot assert claims relating to her delayed bottom-bunk detail against Dr. Lacy, who merely issued the order for bottom-bunk pass and did not have any part in the administrative process used to transfer August from her top-bunk assignment. (*See* Lacy Aff. ¶ 31 ("I do not know why Plaintiff was placed on a top bunk [at the time of her fall] as the bottom bunk order I had issued was still in place. However, I understand that at times there simply are not a sufficient number of bottom bunks available to accommodate every inmate who has a pass."); *see also Bout v. Bolden*, 22 F. Supp. 2d 646, 649 (E.D. Mich. 1998) (dismissing an Eighth Amendment claim against a prison guard who refused to honor an inmate's bottom-bunk

---

[1] The Court further notes that MDOC prisoners "may receive copies of documents contained within [their] health record by making a specific, written request to the appropriate health information manager or designee and paying the required per-page fee, as set forth in OP 03.04.108-B 'Prisoner Access to Medical Records.'" (MDOC Policy Directive 03.04.108.)

pass because "Plaintiff slept in his top bunk from July 20, 1994 through September 7, 1994 without incident before he claims to have been injured by falling. At most, defendant Marshall may have been negligent . . . ."). Her untimely request will be denied as futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a court may deny leave to amend based on may deny leave based on undue delay, bad faith, dilatory motive, or futility); *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("[A]llowing amendment after the close of discovery creates significant prejudice . . . .").

### F.  Objection 6: Denial of Appointed Counsel

August seeks the appointment of counsel in her fifth objection. *See* 28 U.S.C. § 1915(e)(1). The "[a]ppointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). Courts consider "the complexity of the factual and legal issues involved" and "the type of case and the abilities of the plaintiff to represent [herself]." *Lince v. Youngert*, 136 F. App'x 779, 782 (6th Cir. 2005). Appointment of counsel is not appropriate, however, where the litigant's "claims are frivolous or when the chances of success are extremely slim." *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985). August first moved for the appointment of counsel in this case in November 2013. (Dkt. 50.) Magistrate Judge Grand denied the request on November 18, 2013. (Dkt. 51.) Specifically, he found that August had "not shown exceptional circumstances meriting the appointment of counsel." (*Id.* at 1.)

August's renewed Motion to Appoint Counsel is not appropriately asserted in her objections to the Magistrate Judge's Report and Recommendation on the Motion for Summary Judgment. *See* E.D. Mich. Local Rules App'x ECF R. 5(e). But the Court will address it because August recently filed a separate Motion for Appointment of Counsel (Dkt. 91.) In her objection,

and in her motion, August asserts that she struggles with mental health issues and urges that

Corizon Healthcare and their employees consider lawsuits to be a cost of doing business. These

arguments do not persuade, nor do they impact the Magistrate Judge's recommendation.

First, given that the Court has found August's substantive objections to the Report to be

without merit and will therefore grant summary judgment and dismiss the case, her chances of

success in this case are low. Second, the case has been narrowed to the sole issue of whether four

medical doctors violated the Eighth Amendment in their treatment of August. Third, August has

timely briefed and argued her claims to this Court, and has demonstrated her understanding of

the issues in this case. That the Defendants may have had prior experience with lawsuits is not

material to the analysis, which focuses on the claims at issue in the case and the pro se litigant

herself. The request to appoint counsel will be denied.

### G. Objection 7: Emotional Distress Damages

In her final objection, August contends that the Magistrate Judge "fail[ed] to respond to

her severe emotional distress and mental suffering . . . over the past five years." (Obj. at 13.) She

also says that her requests for medical records regarding her mental health have been denied.

(*Id.*) The Court has already addressed August's request for additional medical records.

As to August's argument regarding damages, she cites the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. 1997e(e). That section provides that a federal prisoner may not bring a

civil action "for mental or emotional injury suffered while in custody without a prior showing of

physical injury." 42 U.S.C. 1997e(e). Without some showing of physical injury, such claims

must generally be dismissed. *See, e.g.*, *Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir.

2010) (holding that a prisoner's claims arising from a strip search were not cognizable under the

PLRA because he did not sustain any physical injury). But the Medical Defendants did not seek

dismissal on this basis, as they point out in their response to August's objections. (Resp. at 13.) And if August is arguing that this section affirmatively allows her to recover for emotional damages stemming from the actions alleged in the Complaint, the Court need not reach the issue because it has already determined that August's claim does not survive on the merits.

## IV. ADDITIONAL MOTIONS

After the Magistrate Judge filed his Report, August filed four additional motions. (Dkts. 88–91.) Her Motion to Compel Defendants to Produce Medical Records (Dkt. 88), Motion Requesting More Time for Discovery (Dkt. 89), and Motion for Appointment of Counsel (Dkt. 90) parallel the objections overruled above and will therefore be denied as moot. And having overruled August's objections to the Magistrate Judge's finding that the Medical Defendants are entitled to summary judgment on all remaining claims, the Court will also dismiss August's Motion to Stay Case Pending Federal Investigation (Dkt. 89) as moot.

## V. CONCLUSION

For the foregoing reasons, the Court OVERRULES August's objections (Dkt. 86) and ADOPTS the Report and Recommendation (Dkt. 84). It follows that the Medical Defendants' Motion for Summary Judgment (Dkt. 65) will be GRANTED. August's additional motions (Dkts. 88–91) will be DENIED.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  March 23, 2015

15

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 23, 2015.

<u>s/Jane Johnson</u>
Case Manager to
Honorable Laurie J. Michelson